## O. H. MAY COMPANY v. GUTMAN'S, INCORPORATED et al.

Eastern Section. July 25, 1925.

Certiorari denied by Supreme Court, October 17, 1925.

1. **Process. Service can be had on a corporation only by serving persons designated in the statute.**
Serving of process can be had upon a corporation only in the manner prescribed by statute and if the service is not upon a person upon whom the law declares service shall be deemed sufficient, the judgment is void.

2. **Process. Statute on service of process must be strictly pursued.**
The method of making personal service of process as prescribed by statute is mandatory and must be strictly pursued.

3. **Process. Return. Sheriff is not bound to show by his return the officer upon whom he served the writ.**
The sheriff is not bound to show by his return in serving a corporation that the person upon whom he served it is the proper officer of the corporation to be served, but the service in fact must be upon the right person. This can only be put in issue or inquired into in the same manner that the fact of service upon the right person in any other case may be put in issue.

4. **Process. Return. There is always a presumption that the officer did his duty.**
Where the return of the officer is questioned, there is always the presumption until the contrary is made to appear that the officer has done his duty and has served his process upon the proper person.

5. **Process. Service. Burden is upon defendant to show that service is not proper.**
The burden is always on the defendant where the return is proper on its face to show that he was not properly served.

6. **Process. Service. The return is not conclusive.**
The return is not conclusive and the facts may be shown to be otherwise than stated in the return, but the burden is upon the party complaining of the service to show by clear and convincing proof that he was not served with process.

**7. Process. Evidence. Evidence of one witness will not impeach an officer's return.**

Although the testimony of one witness will not suffice to impeach an officer's return, yet upon additional evidence the return may be impeached.

**8. Process. Evidence held insufficient to impeach return of officer.**

In an action wherein it was contended that the party was not properly served and the only evidence to impeach the return of the officer was that of the party served, together with evidence of another party who stated that he did not hear and see all that took place, held the evidence was insufficient to impeach the officer's return.

Appeal from Chancery Court, Knox County; Hon. Chas. Hays Brown, Chancellor.

Affirmed.

C. W. Dawson, of Knoxville, for appellant.

Andrews & Cowan, of Knoxville, for appellee.

SNODGRASS, J. This suit was brought by the complainant against Gutman's, Incorporated, City National Bank and W. A. Chanaberry. The object of the bill is to enjoin the defendant, Gutman's, Incorporated, its servants, agents, attorneys or solicitors from further proceeding in the enforcement of a judgment which Gutman's, Incorporated had obtained against the complainant before a Justice of the Peace in Sullivan county for the sum of $133.30, or from proceeding on any execution issued thereon, or from in any way attempting to collect the same pending the hearing of the case; and to restrain the defendant W. A. Chanaberry from paying over to defendant Gutman's Incorporated, or any of its agents, solicitors or attorneys any sum or sums of money received by him by reason of any execution based on said judgment placed in his hands, or from in any way proceeding on said execution until further orders of the court. Also restraining the City National Bank from paying over to said W. A. Chanaberry, or to any others, any moneys of complainant by reason of the service of any garnishment served by reason of said garnishment; asking that said judgment be decreed utterly void on account of alleged failure of the service of any process upon the complainant requiring it to appear before said justice to answer in the said cause, and for such reasons asking that the injunction be made perpetual.

An injunction was issued in accordance with the prayer and purpose of the bill, and was served upon the parties.

The answer of Gutman's, Incorporated was filed, in which it admitted that on November 10, 1923 it obtained a judgment against the complainant before James P. Raider, a Justice of the Peace for Sullivan county for $133.30 and costs, and that execution was issued thereon on March 22, 1924, by John M. Fain, J. P. for said county, and that certified copy of said execution was transmitted to J. R. Ailor, J. P. of Knox county, and on March 29, 1924, execution was

issued by said J. R. Ailor on said certified execution and placed in the hands of W. A. Chanaberry.

It is denied in the answer that complainant had no notice of the proceedings instituted against it in Sullivan county, Tennessee, and was not properly served with process. On the other hand it states that the defendant to this case instituted suit in Sullivan county, Tennessee, against J. E. Smalling, Sr., a resident of Sullivan county, Tennessee, and O. H. May Company, and that proper process in said suit was properly served on O. H. May Company, by being served on O. H. May, the president of said company, and that the said judgment obtained is valid.

While not material except as a circumstance affecting the evidence in this case, it is averred in the answer that J. E. Smalling, Jr. made a chattel mortgage to the complainant, and that complainant took possession of the furniture and sold it; that this defendant had originally sold the property to J. E. Smalling, Sr. and retained title to secure the unpaid purchase money; that thereupon the property was shipped to J. E. Smalling, Jr. at Knoxville, who then knew that there was a lien upon the property. After O. H. May Company had gotten possession of the property, and before it had sold it, J. E. Smalling, Sr., took the matter up with O. H. May Company and advised it that the furniture belonged to this defendant, but instead of doing that, complainant sold the furniture and thereafter failed to answer the several letters this defendant wrote to it about the furniture. Then they deny all other allegations not specifically admitted or denied.

This averment as to the furniture discloses the nature of the claim of Gutman's, Incorporated, for which the said judgment was obtained before the Sullivan county, Justice of the Peace in the suit against J. E. Smalling, Sr. and this complainant and sought to be enjoined in this case, and is in response to the averments in the fourth paragraph of complainant's bill, that

"If deemed material as to it, complainant would show to the court the following facts: One J. E. Smalling, was in the fall of 1921, a vocational student in the city of Knoxville. Said J. E. Smalling approached complainant on the matter of a loan and offered to give as security a chattel mortgage on his furniture. Said J. E. Smalling told complainant that this furniture had been given to him by his father; that his father had purchased this furniture in Sullivan county, Tennessee, and that the seller was informed that it was to be a gift and was to be shipped to said Smalling in Knoxville, Tennessee. Complainant accordingly made a loan to said Smalling and took a chattel mortgage on his furniture and foreclosed thereon when said Smalling failed to pay at maturity. Complainant would further

show that said defendant, Gutman's, Incorporated, has no claim against it whatever because of said transaction; that said defendant, Gutman's, Incorporated, made no attempt to replevy said furniture, or to take any other steps to repossess itself of said furniture according to law. Complainant is not advised and does not know whether defendant, Gutman's, Incorporated, retained title in said furniture, or in what manner, shape or form defendant, Gutman's, Incorporated, bases its claim against it because of said transaction. If said furniture was purchased from defendant, Gutman's, Incorporated, defendant well knew that the purpose of the purchase was to ship said furniture to J. E. Smalling at Knoxville; and that even if said Gutman's, Incorporated, had retained title in said furniture, it waived any rights it had thereunder by giving its consent to the shipment of said furniture. In any event, said defendant, Gutman's, Incorporated, would be compelled to repossess itself of said furniture as provided by law before it could institute suit on any transaction concerning it. Complainant would further show that it had no notice of any of these facts at the time said loan was made; that said loan was made in entirely good faith.''

The cause was heard before the Chancellor, who found in favor of the defendant and dismissed the bill; from which the complainant has appealed and assigned as his criticism, that

"(1) The Chancellor erred in dismissing complainant's bill and in holding that the equities of the bill were fully met by the answer and not sustained by the proof.

"(2) The Chancellor erred in taxing complainant with the costs of the cause, and in awarding execution for costs and on the injunction bond.''

It is insisted by the complainant, O. H. May Company, that even if it be conceded that service of process was had upon O. H. May, that it was not a service upon O. H. May Company, which was a corporation, because as a matter of fact O. H. May was not its president at the time; that Norman B. Morrell was at that time president of the company, and was present and available for service.

If this contention be true, then the Chancellor was in error, and the complainant would be entitled to reverse his decree, and to a decree here perpetually enjoining the judgment. By section 4539 of Shannon's Code, it is provided:

"Service of process on the president or other head of a corporation, or, in his absence, on the cashier, treasurer, or secretary, or, in the absence of such officers, on any director of such corporation, shall be sufficient.''

If in fact the service was not upon any person upon whom the law declares service shall be deemed sufficient, the judgment is void. Carlisle v. Cowan and others, 85 Tenn., 165.

The method of making personal service of process, when prescribed by statute, is mandatory, and must be strictly pursued. 21 R. C. L., sec. 16, page 1274, and authorities there cited. 32 Cyc., page 557, sec. 7.

But is this contention tenable under the facts of this case? While O. H. May was not president at the time of this alleged service of process, and while Norman B. Morrell was president at the time, yet O. H. May was a director of the company from its organization, and at the time was its manager and treasurer. Norman B. Morrell was not present at the time of the service of the process, but was absent, as the state of the record shows considering the presumption that must fairly be indulged. It is true it is claimed that he was present, but the only evidence in the record on the point is that of Mr. May, who says: "I presume he was (available and present in the city at that time), he was always present at every meeting."

The only presumption that can be entertained at this stage of the record is that the sheriff did his duty, and the question of proper service is one of fact.

In the case of Wartrace v. Wartrace, etc., Turnpike Co., 2 Cold., 515, it is held that the sheriff is not bound to show by his return that the person upon whom he served it is the president of the corporation, but it holds that the service in fact must be upon the right person.

"Was the process served upon the person upon whom the law declares service shall be sufficient? And 'this can only be put in issue or inquired into in the same manner that the fact of service upon the right person in any other case may be put in issue. The presumption in all such cases is, that until the contrary is made to appear, that the sheriff has done his duty and has served his process upon the proper party.

"If, in fact, the service was not upon any person upon whom the law declares service shall be sufficient, the judgment is void, and the aggrieved party has a remedy by a proceeding, in which that fact may be shown."

Complainant in a proceeding by this bill has sought to make this fact appear. The burden is upon him to do so. The sheriff's return upon the counterpart warrant issued from Sullivan county to Knox county on the 16th day of October, 1923, is as follows:

"Came to hand the same day issued and executed by reading the within warrant to O. H. May, and citing him to appear before J. W. Norvell, Esq., for trial the 10th day of November, 1923, at 2:00 o'clock, P. M. A. A. Seaton, D. S."

The original warrant had been executed upon J. E. Smalling, in Sullivan county, and set for trial before said justice on said date.

At best the evidence of O. H. May shows that Mr. Morrell was president, but was not present when the warrant was served. This fact, however, sufficiently appears from the presumption in favor of the return that he was not available for service, it only appearing that he was president; and this is the only attempt in the evidence to negative the presumption that, while Mr. May was not president, he was still the proper officer to be served. In lieu of the president the next direction the statute gives is that it may be served upon the cashier, and next the treasurer. There being no evidence to show that next in line there was a cashier available, the presumption is that there was not, and the evidence showing that Mr. O. H. May was treasurer, and the process being served upon him, fixes a proper service upon the company, if as a matter of fact he was actually served.

The return is not conclusive, and the facts may be shown to be otherwise than stated in the return. Carlisle v. Cowan, 85 Tenn., 165.

Although the testimony of one witness will not suffice to impeach an officer's return, yet upon additional evidence the return may be impeached. Driver v. Cobb, 1 Cooper's Chy., 490; Tatum v. Curtis, 9 Baxter, 360; Henry v. Wilson, 9 Lea, 176; Harris v. McClanahan, 11 Lea, 181; Hunter v. Kirch, 4 Hawk., 277.

However, that the return may be disputed, is not controverted. It is only insisted that the judgment and proceedings attacked, being regular upon their face, the burden is cast upon the complainants to show by clear and convincing proof that they were not served with process.

This we do not think has been done. Mr. May's account of the service is as follows:

"Q. Now state as fully as you can what occurred there between the officer and yourself on that occasion. State the date, if you know the date. A. I don't know the date, some time last fall. I can't recall the date. I don't believe I can even recall the month. Sometime last fall a man came into the office and asked for Mr. May, and Mr. Weaver and myself was transacting some business at the time, and I told him this was Mr. May, and he said that he had some papers for me. He handed me this paper and I read the caption of it and handed it back to him. I stated to him that they had had that account in the hands of attorneys here for some time, and for some reason attorneys had never prosecuted the case, and I didn't think they had any grounds to prosecute the case, and they sent the papers and they had never been served, and after explaining it to him he said that he didn't believe there was a damn thing in it, and he would just send it back up there and wouldn't have anything to do with it."

"Q. Did you read the warrant? A. No sir, I didn't."

"Q. Did the officer read the warrant? A. No sir, he didn't."

"Q. Did he offer to read it to you? A. No sir."

"Q. You did not refuse to hear it read? A. No sir, I did not. He didn't even tell me he was an officer, but I took the papers and presumed he was an officer, and looked at the caption of the bill. They had had their attorneys to see me here about two years ago, and they also had one of their men,—I don't know, it might have been Gutman himself, from Bristol, to call on me."

The O. H. May Company was in the mortgage loan business, and the Mr. Weaver spoken of as being present was a client of the company and owed them money. He states he was there on business, and was asked:

"Q. Now just state what transpired at that time. A. Well, when the officer came in, why he asked for Mr. May, and told Mr. May he had some papers with him, which he pulled out of his · pocket. Mr. May looked at the heading of them and explained it to him, and handed it back to him, and told him there wasn't anything to those papers, and this officer told him he didn't believe there was anything to them, and with a cuss word there he put them back in his pocket and said he would send them back to the place where they came from and write them about it."

"Q. You stated that the officer said there was nothing to them, and that he would return them? A. He said he didn't believe there was anything to them at all."

"Q. Did he read the papers to Mr. May? A. If he did I didn't know it. He just took them out and handed them to Mr. May, and Mr. May looked over them and said there wasn't anything to them, and he put them back in his pocket and said there wasn't anything to them."

On cross-examination he was asked:

"Q. What kind of business did you have, Mr. Weaver? A. Well, I have some money borrowed, an account there, you know, and I was in there to renew the note."

"Q. How much do you owe them? A. $150.00."

"Q. How often do you go there? A. I go there about every 18th of the month." . . .

"Q. Were you still there when the officer left? A. I don't know whether the officer left first or not. I believe the officer went out first."

"Q. You are not sure whether the officer went out first or not? A. I am not sure, but I think he did."

"Q. Did you pay pretty close attention to what went on? A. Pretty close, yes."

"Q. Did you hear everything that was said? A. Well, now, I heard part of what was said. I never paid enough attention to that. I didn't think it amounted to anything; didn't pay enough attention to tell you what the officer said."

"Q. You didn't pay much attention to what was going on, you say? A. I didn't pay enough attention to remember what all was said." . .. .

"Q. Did he ask Mr. May any questions when Mr. May was telling him about the case? A. Well, I am not positive in that, I won't say for sure, because I never paid no attention to it. This talk about the warrant business is about all I can tell you about."

".Q. You don't remember whether he asked Mr. May any questions or not while Mr. May was explaining the case to him? A. No, I don't remember that."

"Q.. He might, or he might not? A. I wouldn't say at all."

"Q... You don't remember much about it because you weren't interested in it? A. No, I wasn't interested in it. It was nothing to me, you know."

"Q. And it was not called to your attention for some time after that, wasn't it? A. Just today."

"Q. Just today? A. Yes sir." .

"Q. Well, all you remember is what you have stated here, is it not? A. Yes sir."

"Q. And there was a good deal of talking that you don't re-member? A. Yes sir."

"Q. Talk by both the officer and by Mr. May that you don't remember? A. Yes sir, I didn't pay much attention to that."

At another time, and later, it is insisted that the officer was at O. H. May's place of business and stated that he had not served the process when a Mr. Price, the bookkeeper was present, and with reference to that Mr. May and Mr. Price give an account as follows:

Deposition of Mr. May.

"Q. Have you any time since the visit of the officer on that occasion talked with said officer concerning that occurrence? A. About two weeks ago he was in my office to see Mr. Price."

Mr. Cowan: "That is objected to as hearsay."

"A. The same man was in my office to see Mr. Price, a man connected with my office force, and I told him that somebody had been down there with an execution from Gutman's, Incorporated, and asked him how they could get an execution when I had never been served with a warrant, and I asked him if he served me with any warrant, and his reply was no."

This, he says, was after the bill was filed in this case.

In reference to this Mr. Price in his deposition, says:

"Q. Now will you go ahead and state what that conversation was? A. Sometime after the first of the year, I believe it was, Mr. Seaton, the deputy sheriff, came in there to see me on some business, and during this time he and Mr. May got into a discussion about this account, and Mr. May made the remark to him, he says: 'The truth of the business is you never served your warrant on me, did you?' And he says: 'No,' and just went on out. That was the end of the discussion I heard; that was all."

"Q. Did you know from the conversation that they were talking about this Gutman's, Incorporated matter? A. That was what I understood, yes sir."

On cross-examination he was asked:

"Q. Mr. Price, were you in the same room when Mr. May and the officer were there? A. Yes sir. Well, part of the time, and a part of the time I was not. That is the reason I did not hear all of the conversation. I was working some there and busy at the time, and as he said that it came to me what they were talking about."

"Q. Did you hear the name Gutman pronounced by the officer or Mr. May, or did Mr. May just tell you something about it afterwards? A. I don't remember that I did." . . .

"Q. What was the question? A. He asked him, he said, 'the truth of the business is you never served those papers on me, did you?' And Seaton said 'No.' He was fixing to go out as he said that. They had spoken a few words, though, just before that in regard to that part of it. I recalled that case when they mentioned it, and it caused me to think that they were talking about this particular case."

"Q. Did you hear the name Gutman pronounced? A. No sir, I don't remember that I heard that."

"Q. You just heard them talking about a certain case, that was all you understood? A. Yes sir."

The record in the original case of Gutman's, Incorporated against J. E. Smalling and O. H. May Company before J. W. Norvell, a Justice of the Peace for Sullivan county was filed as Exhibit "A" to the deposition of Cowan, and is made Exhibit "A" hereto. It shows that on the 1st day of October, 1923, a warrant was issued by said justice to any lawful officer of said county requiring him to summon said J. E. Smalling and O. H. May Company, to appear before him or some other justice of said county to answer complaint of Gutman's, Incorporated in a plea of debt due by assumpsit in the sum of $133.30. This warrant came into the hands of J. H. Bay (or Boy) a constable, and it was executed on the said J. E. Smalling on October 16, 1923, and the trial set before Esquire Norvell

for November 10, 1923. And on the 16th of October, 1923, the said J. P. issued a counterpart of this summons to Knox county, Tennessee, for the said O. H. May Company, and this counterpart is the process which the company says was not served. Caption and the return of the deputy sheriff is made thereon as follows:

"Counterpart No. 2740.

"Magistrate's Warrant.

"Gutman Incorporated, Plaintiff,

v.

"J. E. Smalling,

"O. H. May Co., Defendants.

"Issued 16 day of Oct., 1924.

"J. W. Norvell, J. P.

"Came to hand the same day issued, and executed by reading the within warrant to O. H. May, and citing him to appear before J. W. Norvell, Esq., for trial the 10 day of Nov., 1923, at 2:00 o'clock P. M.

"A. S. Seaton, D. S."

The original also of this warrant is filed in the record, and the body of the warrant is shown to have been in the handwriting of someone else than that of the J. P. Norvell who signed the warrant, and in this same handwriting appears to be a part of the sheriff's return on the back of said warrant fixing the time and place of the trial, which was the time and place fixed by the original, and in black ink, so that the sheriff in blue ink has completed the return by inserting the name of O. H. May, and signing his own name to the return; so that if this was the paper handed Mr. May, and he read the caption, he was also apprized of the time and place where the trial was to take place.

However, the sheriff's deposition was taken, and he says he read the warrant. He was asked:

"Q. What was your occupation in November, 1923? A. Chief deputy sheriff of Knox county, Tennessee."

"Q. I am sending herewith a magistrate's warrant from Sullivan county to Knox county, Tennessee, and one to Sullivan county, and am asking you to file these as exhibit to your interrogatories, and am asking you to answer I do. A. I do."

"Q. There is a purported return to Knox county, the same being as follows: 'Came to hand the same day issued and executed by reading the within named to O. H. May, citing him to appear before J. W. Norvell, Esq., for trial the 10th day of November, 1923, at 2:00 o'clock P. M. A. A. Seaton, D. S.' Did you make that return? A. I did."

"Q. As well as you remember, please write down just what went on on the occasion referred to in the return set out above. A. As I remember, when I read the warrant to Mr. May, he remarked that he was not going to accept service, as he did

not have to, it being out of this county, and I remarked that I did not care what he done, as I had done my duty by reading it to him.''

''Q. Was there anyone else with Mr. O. H. May in the room on that occasion? A. Not that I remember.''

''Q. Did you tell Mr. O. H. May that you would not have anything to do with the warrant, and would not serve it? A. I did not, and I read the warrant to him.''

''Q. Did you, sometime since November, 1923, on going down to O. H. May Company's office to serve some papers on a man named Price, tell Mr. May that you had never served him with any papers, that you had not served him as stated in your return, Exhibit '1' to your interrogatories? A. I did not.'' . . .

''A. On one time when I was in May's office he said he did not see why those parties did not make the debt off of Smalling, as he was worth it, and not bother him.''

This matter had been pending a long time. Mr. May or his company had taken a mortgage for $40 on the furniture that had been sent young Smalling by his father. The father had purchased it from Gutman's, Incorporated, who it seems had retained title, and perhaps had a superior lien or claim. But the O. H. May Company had taken possession of the property, which Mr. May seems to think had been a sufficient foreclosure, and there had been correspondence between him and the Gutman's, Incorporated, who had made unsuccessful efforts to get the same adjusted, and had even sent lawyers or representatives to Mr. May, and who it seems were never able to survive Mr. May's opinion that there was nothing in the claim. On one occasion the elder Smalling seems to have come to his daughter-in-law's relief in Knoxville, and settled or attempted to settle the May Company's claim by the execution of a note, upon which the furniture was to be released, but Mr. May has a hazy, though not a sure recollection, that there was to be some payment made on the note before it was to be released, though why his recollection on this important matter should be infirm is not perceived.

Mr. May is not sustained by Mr. Weaver in his claim that the warrant was not read over to him, or in his assertion that the sheriff said he would not have anything further to do with it. At best Mr. Weaver's statement is that the sheriff said he did not think there was anything in it, and that he would send the papers back, and does not pretend to have heard all that was said, nor did he pay a great deal of attention to what was said. Indeed the papers were to be sent back to Sullivan county, for that was where their return was to be made, and the sheriff might have agreed with Mr. May that he did not think there was much in it, but that does not mean that he did not execute the papers.

As to the conversation heard by Mr. Price, in which the sheriff was alleged to have said that he did not serve the warrant, this at least was hearsay and could serve only to impeach the testimony of the sheriff, who says that he did not say it. He was there, however, and they were talking about the Gutman case, and Mr. May was complaining that they did not make it off of Smalling. If he made such a remark and it was construed by the witness to refer to the execution of this warrant, we do not think it was so intended. This case, we think, serves as a pretty good illustration of the rule, that proof of contradictory statements should be received with caution, since the impeaching witness may not have understood correctly, or the impeached witness may not have expressed himself fully or accurately. The language of the opinion in the case of Crawford v. Palmer, from Cocke county, filed February 10, 1921, and cited in defendant's brief is appropo.

"There is an attempt to weaken the testimony of Haun by showing he made a statement to the husband of one of the complainants indicating his recollection of what took place was different in that conversation from what he testified; and also a conversation with another man in which he understood the deputy sheriff to make a statement different from those he made when testifying. An examination of this testimony demonstrates the unreliability of attacking a judgment upon casual conversations or recollections of witnesses who are interested in the matter.

"At the time these conversations took place Haun had not had his attention directed specifically to the details of this particular matter, and it may be his memory at the time was not refreshed, or that he did not explain himself fully; or that he was not understood correctly."

At any rate we can see no reason why the sheriff should not have done his duty in this instance. His report of Mr. May's idea was, that it being out of his county he would not accept service, and that therefore the papers were no good. He himself did not know Mr. May, nor was he under any obligation to serve him so far as the record shows, and that, too, by becoming derelict in his duty, and incurring personal responsibility for failing to obey the process. He had come there for the purpose of serving the papers, and it is somewhat taxing on credulity to say that he defaulted without rhyme or reason in the discharge of his official duties.

On the whole we agree with the conclusions of the Chancellor and his judgment is affirmed, with costs.

Portrum and Thompson, JJ., concur.